## STATE EX REL. MIKE HOLM v. STAFFORD KING.
### A. J. ROCKNE, INTERVENER.[1]

October 9, 1931.

No. 28,758.

*Herbert P. Keller* and *Keller, Broady & Chapin,* for appellant (relator below).

*Henry N. Benson,* Attorney General, and *James E. Markham* and *Charles E. Phillips,* Deputy Attorneys General, for respondent.

*A. J. Rockne,* intervener, pro se.

[1]Reported in 238 N. W. 334.

HOLT, J.

From the judgment quashing the alternative writ of mandamus issued on relator's petition, on the ground that the facts therein stated do not constitute a cause of action, he appeals.

Respondent refused to issue a warrant on the state treasurer to pay relator's voucher for postage used in his department in issuing motor vehicle licenses and collecting the moneys therefor, and this action to compel the auditor so to do was brought and the alternative writ of mandamus was issued. On application a taxpayer was permitted to intervene. The facts need not be further referred to, for it is conceded that if L. 1931, p. 376, c. 306, is valid as to item 4 of § 7, a cause of action is stated. Its validity is assailed on two grounds, viz: (a) Art. 16, §§ 2 and 3, forbids the appropriation of moneys derived from the tax imposed upon motor vehicles for any other purpose than the construction and maintenance of the trunk highways established by art. 16, § 1; and (b) the provision in respect to item 4 of § 7 does not come within the title of L. 1931, p. 376, c. 306.

The title of c. 306 reads:

"An act to appropriate money for expenses of the state government and for other purposes and prescribing present and future regulations and limitations relative to, and the expenditure of certain portions thereof, including appropriations from the trunk highway fund to defray expenses for issuing licenses and collecting the monies therefor for the highway department by the secretary of state."

Item 4 of § 7 appropriates to the motor vehicle division of the secretary of state $400,000 for 1932 and $420,000 for 1933. Then follows this:

"Provided, that out of the sums appropriated under item 4, $1,200 is for additional salary of the secretary of state for supervising said division.

"The monies allowed by item 4 are hereby appropriated from monies collected in the motor vehicle division by the secretary of

state's office and are not to be charged to the revenue fund unless it shall be declared that the appropriation from the monies so collected is unconstitutional by the courts of this state, in which event the appropriation is made from the general revenue fund."

The constitutional provisions claimed to have been violated are §§ 1, 2, and 3 of art. 16.

Section 1 establishes "a trunk highway system, which shall be located, constructed, reconstructed, improved and forever maintained as public highways, by the state of Minnesota. * * *

"§ 2. There is hereby created a fund which shall be known as the trunk highway sinking fund. Said fund shall consist of the proceeds of any tax imposed on motor vehicles as herein authorized. The moneys in said fund shall be used for the payment of the principal and interest of any bonds which may be issued under the authority of this article; and any moneys in excess of such requirements shall be transferred to a fund which is hereby created and which shall be known as the trunk highway fund. The trunk highway fund shall be used solely for the purposes specified in section 1 * * *.

"§ 3. The legislature is hereby authorized to provide, by law, for the taxation of motor vehicles, using the public streets and highways of this state, on a more onerous basis than other personal property; provided, however, that any such tax on motor vehicles shall be in lieu of all other taxes thereon, * * *. The proceeds of such tax shall be paid in to said trunk highway sinking fund."

Section 4 authorizes the issuance of bonds the proceeds of the sale of which are to be credited to the trunk highway fund; and in case the trunk highway sinking fund is not sufficient to provide for the payment of interest and maturing bonds the legislature may provide for the taxation of all taxable property to meet the deficiency. Another large source of revenue now going into the trunk highway fund is the excise tax upon gasolene authorized by the last sentence of art. 9, § 5, of the constitution. The income now from the motor vehicle license tax exceeds $10,000,000 a year. The bonds now issued amount to $35,000,000, and total bond issues authorized

by art. 16, § 4, may not exceed $75,000,000. Hence if this tax is not materially reduced many millions of dollars will be transferred every year to the trunk highway fund though the expense of collecting the tax be deducted. Especially is that true, since the amendment of art. 9, § 5, in 1924, which, by authorizing the excise tax on gasolene, has added millions of dollars every year to the trunk highway fund.

The learned trial court, in an exhaustive opinion, reached the conclusion that the part of L. 1931, p. 376, c. 306, § 7, appropriating item 4 contravened the constitutional provisions above quoted, in that the "proceeds" as therein used meant the whole sum collected undiminished by any expense incurred in the imposition and collection of the tax. The conclusion was also reached that the provision relating to item 4 did not come properly within the title of c. 306, that there was a fatal disharmony between the title and the provision relating to item 4.

In 50 C. J. p. 427, it is stated of the word "proceeds":

It is "not a word of any fixed or definite meaning, but of varying and loose significance, employed with different meanings, of equivocal import and great generality."

Numerous decisions are cited to substantiate the text. And on page 430 we find text and decisions to the effect that proceeds in written instruments may mean gross proceeds and may mean net proceeds, depending upon the subject matter and purpose of the document; but no case is found touching the meaning of the word in a constitutional provision which leaves the legislature free to license and tax a certain class of property to produce an income for a special purpose.

We start with the proposition that the act of the legislature must be sustained unless its unconstitutionality appears beyond a reasonable doubt. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 8931, 8932. By art. 16 a highway system of an immense extent is established. To carry it into effect requires the raising and spending of vast sums of money every year. The three main sources now are (a) an excise tax on gasolene under art. 9, § 5; (b) a license tax

on motor vehicles under art. 16, § 3; and (c) a general tax in case an insufficiency exists in the trunk highway sinking fund to meet the interest on bonds and the maturing bonds issued under art. 16, § 4. So far as the gasolene tax is concerned, it is collected by the state oil inspection department with little or no extra labor and expense to that otherwise placed on that department; and in relation to any general tax needed to avoid a deficiency in the sinking fund it is assessed and collected in the usual course of collecting such taxes and at no appreciable additional expense. It is to be noted that there is no specific prohibition in art. 16 against making the expense of imposing and enforcing the motor vehicle tax payable out of the money collected; nor is there any command to charge such expense against the general revenue fund. The legislature has, so far as constitutional provisions go, free hand in regard to the means and method of licensing and taxing motor vehicles. Had the legislature placed the enforcement of this tax with the commissioner of highways and his staff of employes, who now are paid out of the funds established to carry out the purposes of art. 16, we would naturally expect that the expense connected with such enforcement of the tax would come out of the same funds. That the duty is instead placed on another state officer should make no difference. The people, in establishing the sinking fund by art. 16, § 2, and devising its revenue or source of income, set apart from the taxable property of the state all motor vehicles (with minor exceptions) using the public highways for the purpose of taxing the same for the sole use of the highway system. The court below cogently argues that when we speak of the proceeds of a tax we understand the amount collected, not taking into account the expense of imposing or collecting the same, since the function of imposing and enforcing all taxes is one of the main general functions of government. This is true. For the general imposition of taxes upon property and upon owners of property the state has devised a system making it the official duty of specified state, county, and municipal officers to perform various parts pertaining thereto. Taxes thus imposed and collected through the regular established

channels of taxation must be considered as produced at the general expense of running the state and municipal government.

But did the people so consider the money to be derived from the motor vehicle tax authorized by art. 16? Here is a tax to be laid upon a certain class of property of immense value for the special benefit of such property or the owners thereof, no part of which tax may be used for the general expenses of government. Does art. 16 intend that the great expense of imposing and enforcing this special tax is to be borne by the general taxes derived from other property? We think not. It is more reasonable to consider that when by art. 16 the people established this trunk highway system and authorized the taxation of motor vehicles on a more onerous basis than other property for the special use of the system it was thought that the expense of imposing and collecting this tax which was to produce the necessary funds was an essential part of the enterprise to be paid out of such funds. This conclusion is also warranted by a consideration of art. 16, § 4, as presently to be noted.

The court below also calls attention to the fact that licensing and registering motor vehicles serves the state as a police regulation tending to facilitate the detection of criminals and the suppression of crime. That a constitutional provision or a statute accomplished more than one object should not obscure its main purpose and its classification accordingly. The main purpose of the motor vehicle tax was to provide the means for constructing and maintaining the trunk highway system. Incidentally thereto it may also lend itself to serve other functions and objects of government such as its police power.

Since by art. 9, § 5, the state is expressly forbidden to "contract any debts for works of internal improvements, or be a party in carrying on such works, except as authorized by section 16 of Article 9, and by Article 16 of this Constitution," the intervener argues that the general revenues of the state cannot be devoted to the collection of the motor vehicle tax, for to do so would make the state a party to carrying on or aiding such improvement. Building or aiding in building and maintaining a public highway system is en-

gaging in works of internal improvement. Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L.R.A. (N.S.) 415. The tax cannot be imposed or enforced except at an estimated expense of nearly half a million of dollars every year. It is the only means provided by art. 16 to raise the wherewithal to conduct the trunk highway system, except in the event, hardly to be looked for, that the tax does not produce enough for the requirements of the sinking fund. Therefore there is reason for holding that if the general revenue fund of the state is devoted to the extent of $400,000 this year in order to bring the $10,000,000 tax into the treasury, the state has aided in carrying on an internal improvement to that extent. To be sure, art. 16, § 4, provides for bond issues to carry out art. 16, § 1; but the payment of interest and principal of the bonds comes solely from the motor vehicle tax paid into the sinking fund. It is only when there is not enough in that fund to meet these payments that a tax on other property is authorized. So it may be reasonably argued that by the implied behest of art. 16 no expense or substantial aid was to be furnished from the general revenue fund or the general taxes to carry on the trunk highway system, either by way of imposing or collecting the motor vehicle tax or otherwise. It is only in case of an emergency, to-wit, a deficiency in the trunk highway sinking fund, and not until then, that § 4 authorizes a general tax on all taxable property other than motor vehicles to be levied to replenish that fund. Impliedly, therefore, § 4 forbids the taking of the $400,000 or more needed every year for collecting the motor vehicle tax out of the general taxes or general revenue fund.

Article 16 was adopted in 1920. Four years later art. 9, § 5, was adopted in the form above quoted. This section as then adopted left the section reading the same as it read before 1920, when art. 16 was adopted, except inserting after the language prohibiting the state from being a party in carrying on works of internal improvement the words "except as authorized by section 16 of Article 9, and by Article 16 of this Constitution"; and then follows the authority for imposing the excise tax on gasolene. The people then knew that the construction and maintenance of public highways consti-

tuted works of public improvements, for the decision of Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L.R.A. (N.S.) 415, was rendered in 1909. Art. 9, § 16, authorizes the imposition of a general tax for a bridge fund, but this does not go into the trunk highway funds.

Our conclusion therefore is that the provision as to item 4 of such § 7, L. 1931, p. 376, c. 306, is not repugnant to any constitutional provision.

We see no such divergence between the title to L. 1931, p. 376, c. 306, and the provisions relating to item 4 of § 7 that would justify the court in declaring the provision invalid or unworkable. The provision clearly appropriates specified amounts from the "monies collected in the motor vehicle division by the secretary of state." What he collects goes into the trunk highway sinking fund. We apprehend the auditor and treasurer will have no great difficulty in complying with the act so far as paying the voucher out of the proper moneys, even though the language used is not as accurate as might be desired.

The judgment is reversed.

HILTON, J. took no part.

DIBELL and LORING, JJ. (dissenting).

The argument of the relator in support of his contention that the expenses of collecting and creating highway funds may be taken from the total collected instead of being charged as a governmental function of the state is stated by the trial court to be based upon three propositions. It says:

"The claim is based on three main contentions: (1) The 'proceeds of any tax imposed on motor vehicles' referred to in Art. 16, § 2, of the Constitution is alleged to mean the 'net proceeds' 'after deducting the expense of collection'; (2) the purposes for which the Trunk Highway Fund may be expended are alleged to 'include the cost of collection of this special tax as a service in maintaining the highways'; (3) it is claimed that appropriating money from the General Revenue Fund 'for the purpose of collecting the funds for the Trunk Highway Fund' is in violation of Art. 9, § 5, of the Con-

stitution, prohibiting the incurring of any debts for works of internal improvements or the carrying on of such works."

If either the first or second claim is sustained the relator succeeds. The third is important only as it aids the interpretation of the first and second.

The proceeds of the tax on motor vehicles constitute the trunk highway sinking fund. The tax goes into the state treasury. There it is credited to the trunk highway sinking fund. The moneys can be withdrawn only for the purposes specified in art. 16, § 2; in short, for principal and interest on bonds issued under authority of art. 16. Money in excess of that used for the designated purposes of § 2 are paid into a fund designated a trunk highway fund, to be used solely for the purposes specified in § 1, that is, for the construction, maintenance, etc. of highways.

The proceeds of the tax are the moneys which it produces. They go into the treasury and are earmarked by reference to the fund. They are there in obedience to the call of the constitution to be devoted to the purposes which the constitution specifies. We are unable to attach to the word "proceeds," a word of plain meaning, the word "net," so as to permit the deduction of the cost of collection from the total taxes collected and thus get proceeds such as the constitution intends. The trial court considered such construction to "involve an unwarranted juggling with words."

Neither are we able to agree that the cost of collection, in the exercise of a governmental function, a sovereign act, is a cost of construction, maintenance, etc. and therefore properly appropriated out of the trunk highway sinking fund or the trunk highway fund under the provisions of § 2. Upon this point the trial court said:

"It seems far-fetched to claim that because the proceeds of a tax are in part dedicated to the maintaining of highways, therefore, the labor of levying the tax, collecting it and providing metallic identification plates for the property on which the tax has been paid, is a part of the business of maintaining roads. It seems that it could hardly have been in the contemplation of the framers of the constitutional amendment or of the electors in voting for it that under

the guise of maintaining highways a substantial portion of the proceeds of the tax was to be diverted to pay for governmental functions of the kind above referred to. If that had been intended, it could have been easily incorporated into the amendment  *  *  *."

Nor do we think that art. 9, § 5, prevents the appropriation from the general revenue fund of the expenses of levying and collecting the automobile tax. This claim is forcefully presented by the intervener. If sustained it would lend support to the argument of the relator upon the first two points.

Whether the title of the act is sufficient we do not consider. It is discussed in the prevailing opinion.

In concluding its review the trial court said:

"It is the conclusion of the court that all moneys derived from the motor vehicle tax as received by the state treasurer must be credited to the trunk highway sinking fund and the surplus thereafter credited to the trunk highway fund and that the legislature has no power to appropriate any of the proceeds of the motor vehicles' tax, either prior to the time that such proceeds are credited to the trunk highway sinking fund or after they are credited to the trunk highway fund, unless it be for some purpose connected with the locating, constructing, reconstructing, improving or maintaining of the public highways of the state of Minnesota."

Our view is the same. It may be that it would be better, as things now are, if the constitution makers, back in 1920, had made the extensive system of highway construction carry the cost of collecting the automobile tax. They did not think so then. Not only did they not say so, but on the contrary they carefully protected the proceeds of the automobile tax from any but the constitutionally specified uses.

We think the trial court is right in its position that the appropriation from the highway funds for collection expenses is a diversion of the proceeds of the automobile tax from the purposes to which the constitution devoted them. Therefore we dissent.