E. R. CORY v. STAFFORD KING AND ANOTHER.[1]

February 21, 1941.

No. 32,755.

*Gustav C. Axelrod,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *George B. Sjoselius,* Special Assistant Attorney General, for respondents.

STONE, JUSTICE.

By L. 1939, c. 431, art. 2, § 20 (3 Mason Minn. St. 1940 Supp. § 53-18s), the legislature attempted to impose upon the "taxes and

[1] Reported in 296 N. W. 506.

fees" received by certain departments of state government a charge of five per cent. The purpose was to compel the stated contribution to the expense of maintaining the offices of "the governor, the secretary of state, the state treasurer, the state auditor, the attorney general, the department of administration, the public examiner, the courts, and the legislature." The assigned justification is the legislative estimate that five per cent of the receipts of each of such departments "does not exceed the reasonable cost and value of the services" rendered to each of them by the enumerated officers of the executive and judicial branches and the legislature.[2]

Section 20, as to "taxes and fees" received by the highway department, includes only "all motor vehicle registration taxes" and "all gasoline taxes" credited to the trunk highway fund. There is no attempt to touch the automobile license taxes credited to the highway sinking fund. The two funds are created by the constitution, art. 16, § 2, the sinking fund to "consist of the proceeds of any tax imposed on motor vehicles as herein authorized." That fund is thereby irrevocably devoted to "the payment of the principal and interest of any bonds which may be issued under the authority of this article." Section 2 goes on to declare that "any moneys in excess" of the sinking fund requirements "shall be transferred to a fund which is hereby created and which shall be known as the trunk highway fund." Follows this presently determinative constitutional mandate: "The trunk highway fund shall

[2]Following this preliminary legislative determination, § 20 provides:

"There is hereby imposed upon the gross receipts beginning July 1, 1939, from (1) all fishing licenses, (2) all hunting licenses, (3) all motor vehicle registration taxes credited to the trunk highway fund, (4) all gasoline taxes credited to the trunk highway fund, a charge of five per cent, such charge to be determined at the end of each quarter on the gross receipts for such period. The proceeds of such charge shall be paid into the state treasury and credited to a special fund to be known as the general administration fund. All moneys in said fund shall be subject to appropriations by the legislature for salaries and other regular maintenance expenses for the offices of the governor, the secretary of state, the state treasurer, the state auditor, the attorney general, the department of administration, the public examiner, the courts, and the legislature."

be used solely for the purposes specified in section 1 of this article."

The purposes "specified in section 1" are the establishment, con· struction, and maintenance "forever" of "a trunk highway sys· tem."

Art. 16, § 3, demands that the proceeds of taxes of motor vehicles on the "more onerous basis" authorized "shall be paid in to said trunk highway sinking fund." Art. 9, § 5, authorizing the levy of excise taxes on gasoline, provides (as amended in 1928) that the state "shall place two-thirds of the proceeds of such tax in the trunk highway fund." With reference to the unequivocal restric· tion upon the use of the highway fund found in art. 16, § 2, appel· lant challenges that part of c. 431 which seeks to impose its charge upon all motor vehicle registration taxes and gasoline taxes cred· ited to that fund.

We hold the challenge of the law well-founded. The constitu· tional demand that the highway fund be used "solely" for highway purposes is explicit prohibition of their use for any other. The inhibition of their use to defray any of the general cost of govern· ment could not be more plain.

There is nothing to the contrary in State ex rel. Holm v. King, 184 Minn. 250, 238 N. W. 334. There, a legislative appropriation from the highway fund to cover the expense of the secretary of state in issuing motor vehicle licenses and collecting the license tax was sustained. We considered the conclusion obvious that the cost of collecting that tax was a cost of constructing and maintain· ing the highways and so properly chargeable to the highway fund. It is a mere accident of organization that our automobile licenses are issued and the tax collected by the secretary of state rather than the highway department. Had the legislature, instead of charging to the highway fund the cost of issuing the licenses and collecting the tax, placed the duty with the highway department, no one would have questioned the propriety of charging the attend· ant expense to the highway fund.

Collection of the motor vehicle tax is functionally part of the maintenance of the highway system. On the other hand, the

services in respect to highways of the other departments sought to be benefited by this five per cent charge are but general governmental functions of those departments. Sound is appellant's argument that, when art. 16 was adopted all concerned had in mind that other governmental departments would continue and necessarily render service to the highway department. Notwithstanding, the unequivocal dedication to highway purposes of highway funds was incorporated.

Here, as already stated probably beyond the need of repetition, the legislative attempt is to go so far even as to charge the highway fund with a portion of the maintenance generally, not only of the stated executive activities, but also those of the legislature and courts.

Certain executive agencies such as the state highway patrol are properly incorporated with the highway department and the expense of their maintenance properly charged to the highway fund. It is equally plain, we assume, that the highway fund may, in a proper case, be required to reimburse other departments for special services to it. For example, when the public examiner makes an official audit of the highway department, we assume that there may be no legal objection to charging that department with the cost.

Such services are administrative in nature and so might be performed by the department itself and paid for out of the highway fund. Performed by other departments (as audits should be), there is no constitutional prohibition to their being charged against the highway fund. That is because the expense is directly chargeable to maintenance of highways.

But, as to the chief executive, legislature, and courts, it is just impossible to say that any of their constitutional functions could properly be delegated to the highway department. So no part of the expense of their maintenance is chargeable to the highway fund as against the plain constitutional requirement that it be used for none other than highway purposes.

Minnesota's permanent school funds enjoy a similar constitutional protection. The principal of the funds must remain "inviolate." Minn. Const. art. 8, § 2. The income must be devoted solely to educational purposes. It is beyond the reach of fancy even to suppose that anyone would seriously urge that a part of the income of such funds, to say nothing of the principal, could be arbitrarily diverted from the stated constitutional purpose and used to defray a part of the cost of maintaining the offices of governor, legislature, and courts.

We refuse to sanction disobedience of a statute, whether it be by way of direct attempt or evasion by erroneous construction. Scott v. Prudential Ins. Co. 207 Minn. 131, 134, 290 N. W. 431. All the more imperative is our duty to preserve constitutional mandates against similar attrition, even though the error be that of the legislature itself. One such abrasion might be harmless, or even beneficial in result, were it not for the baleful infection of its invitation to repetition, and thereby ultimate destruction of the whole fabric by the slow but effective process of erosion.

As to all motor vehicle taxes and the two-thirds of gasoline taxes constitutionally put into the trunk highway fund, L. 1939, c. 431, art. 2, § 20, is unconstitutional. Present consideration and decision go no further.

Order reversed.

HOLT, JUSTICE (dissenting).

I am not persuaded that L. 1939, c. 431, art. 2, § 20, is unconstitutional insofar as it imposes five per cent upon the gross receipts from the motor vehicle tax and the gasoline tax credited to the trunk highway fund for administrative purposes. We held in State ex rel. Holm v. King, 184 Minn. 250, 238 N. W. 334, 336, that an appropriation by the legislature from the highway fund of an amount to cover the expense of the secretary of state in issuing licenses and collecting the motor vehicle tax did not violate the constitutional protection given this fund by art. 16, § 2, of our constitution. The same must necessarily hold true in respect to

the receipts of the trunk highway fund from the collection of the gasoline tax. We there said [184 Minn. 255]:

"Does art. 16 intend that the great expense of imposing and enforcing this special tax is to be borne by the general taxes derived from other property? We think not. It is more reasonable to consider that when by art. 16 the people established this trunk highway system and authorized the taxation of motor vehicles on a more onerous basis than other property for the special use of the system it was thought that the expense of imposing and collecting this tax which was to produce the necessary funds was an essential part of the enterprise to be paid out of such funds."

There is nothing in this record to show that five per cent of the motor vehicle and gasoline taxes paid into the trunk highway fund equals or exceeds the actual expense of the imposition and collection of those taxes. On the contrary, the presumption is that the legislature had all the information needed to determine that the percentage fixed was as near the actual expense connected with the collection of those taxes as possibly could be ascertained. To what departments this five per cent from the trunk highway fund is to go, or that all departments of the state government are not covered by L. 1939, c. 431, art. 2, § 20, are questions not now for decision.

JULIUS J. OLSON, JUSTICE (dissenting).

I concur in what Mr. Justice Holt has said but wish to add thereto the following observations:

Obviously, art. 16 of our constitution is not self-executing. By that article, § 1, a trunk highway system was created to be "located, constructed, reconstructed, improved and forever maintained as public highways, by the state." But with the legislature was left the duty and responsibility of finding the ways and means whereby the funds were to be raised with which to carry out the constitutional purpose. Necessarily, then, the determination of what state agencies were to be created or employed in administering and maintaining the system was a legislative function.

The services to be rendered, by whom, what department, the compensation to be paid to the various officers, departments, employes, and the like—all these matters necessarily lie within that field. The amount of license fees to be charged for motor vehicles, the means of collecting the same, including as well the levying and collecting of excise taxes, "upon any substance" used in propelling "motor or other vehicles" upon our highways, were also matters left for legislative action.

The King case, 184 Minn. 250, 238 N. W. 334, as stated by Mr. Justice Holt, is, in principle, determinative here of the constitutionality of the act presently involved. In that case, as here, the contention was that moneys derived from taxes imposed upon motor vehicles could not be used for any other purpose than the construction and maintenance of the highway system established by art. 16, § 1. It is not necessary to elaborate upon the reasons employed by the court for reaching the conclusion that the act there involved was constitutionally valid. There, instead of levying any specific percentage upon which the contribution was to be based, the legislature appropriated a definite sum of money to defray the expenses deemed needful to compensate the state for issuing motor vehicle licenses and collecting the moneys therefor. While there is a distinction in the means to be employed by that act as compared to the present, there is in purpose no distinction.

The basis upon which plaintiff seeks injunctive relief is that the services rendered and to be rendered by the various officials and departments enumerated in the present act "in connection with collection of auto license fees and gasoline taxes are merely incidental to the other services and duties performed by such officials and departments and have always been performed by them prior to" the present enactment. And, he asserts, the present act is therefore "a mere subterfuge to divert moneys collected from automobile license fees and gasoline taxes for other purposes than those permitted by the constitution."

Counsel stipulated and the court found that "the department of highways and the trunk highway system of the state have received

and will continue to receive substantial benefits, through financial economies and otherwise, from the services of the state officers and agencies entitled to share in the proceeds of the five per cent levy." And "such benefits will substantially exceed in value the estimates of cost thereof." If the legislature had enacted that a complete set of new offices and departments should be set up to have charge of the highway system in all things, plaintiff would have to be content with the result although thereby more of expense would be chargeable against his contributions to this fund as an automobile owner than under the present act. To my mind the act is not an "abrasion" upon art. 16 nor likely to be the cause of a "baleful infection" of anyone.

Before plaintiff can hope to prevail he must show beyond a reasonable doubt that the act is unconstitutional. In this respect, so it seems to me, he has utterly failed.

Art. 16 in its plan and purpose is obviously different and distinct from that pertaining to permanent school funds. Under our constitution public schools are supported, and so required to be, by adequate taxes to accomplish the purpose of educating our youth to the end that thereby they may be qualified to assume the duties of citizenship. In addition to the income from this fund, every property owner is required to make his contribution thereto. The automobile license tax and the gasoline taxes levied and collected are in an entirely distinct field. These are not taxes as that word is commonly used. License fees and gasoline excises are charged and paid for the right to use our state highways for motor transportation. No money can be charged against property or the owners thereof for the building or maintenance of our state highways. True, by art. 16, § 4, provision is made to levy against "all taxable property" any deficit that the "highway sinking fund shall not be adequate to meet." But that contingency is not likely to arise. As a matter of experience, we now know that the funds collected and to be collected under the highway amendment are ample for all designated purposes.