# E. RAY CORY v. STAFFORD KING AND ANOTHER.[1]

March 26, 1943.

No. 33,394.

*Gustav C. Axelrod,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *George B. Sjoselius,* Assistant Attorney General, for respondents.

HENRY M. GALLAGHER, CHIEF JUSTICE.

Plaintiff, a taxpayer, brought this action in behalf of himself and all others similarly situated for a declaratory judgment hold-

[1]Reported in 8 N. W. (2d) 614.

ing L. 1941, c. 548, §§ 13, 14, 19, and 22, unconstitutional insofar as it appropriates money from the trunk highway fund to the state auditor, state treasurer, civil service commission (department of civil service), and the commissioner of administration, and for an injunction restraining the state auditor and treasurer from paying out any money pursuant to such appropriations from the highway fund. The case was tried on a stipulation of facts and the trial court made findings and conclusions upholding the law and denying injunctive relief. Plaintiff appeals from an order denying his motion for new trial.

The stipulation enumerates the services performed by the auditor, the treasurer, the civil service commission, and the department of administration insofar as they pertain to highway matters and to the handling of highway funds. It recites that the appropriations to the four named departments were based on budgets and estimates showing the extent and cost of such services for the fiscal years ending June 30, 1942, and June 30, 1943; that the budgets and estimates "were based on investigations of the actual operations of the several offices and departments aforesaid in respect of said services" for the period from July 1, 1940, to March 1, 1941, and were compiled by the department of administration and submitted to the legislature prior to the enactment of c. 548; and that the "amounts of said appropriations corresponded with the estimated costs of said services, respectively, derived as aforesaid."

Attached to the stipulation and made a part thereof is an "Analysis of Services in Trunk Highway Business Performed by State Auditor, State Treasurer, Director of Civil Service, and Commissioner of Administration in Relation to Appropriations from Trunk Highway Fund under Laws, 1941, Chapter 548, Sections 13, 14, 19, and 22, for Fiscal Year Ending June 30, 1942, Based on Experience for First Half-Year." This analysis shows "the extent of said services and the estimated cost thereof for the fiscal year ending June 30, 1942, based on the experience for the first half of said fiscal year as shown by said investigation," and also

shows "a comparison with the aforesaid previous budget estimates." It was stipulated:

"On the basis of the aforesaid investigations and estimates, it is reasonable to expect that under normal conditions and if the activities of the highway department are not decreased, the actual cost to the state of the services aforesaid for the fiscal years ending June 30, 1942, and June 30, 1943, will be substantially as great as the amounts of the aforesaid appropriations made therefor, respectively."

It was further stipulated that the departments here concerned render similar services "pertaining to various other matters than trunk highways"; that accounts are kept of the salaries of certain employes whose exclusive time is devoted to highway matters and of materials used exclusively for highway department purposes; that "with respect to a substantial portion of the services of said offices and departments pertaining to trunk highway matters, no exact account is kept of expenditures therefor as distinguished from expenditures for other services"; and that the "keeping of such accounts would entail substantial additional work and expense." Finally, it was stipulated that if provision were made for the performance by the highway department or by a separate agency or agencies of the services now performed by these four departments, "the cost to the state would be substantially greater than under the existing provisions whereby said services are performed by said offices and departments in connection with similar services in other matters."

L. 1941, c. 548, appropriates money for the general expenses of the state government. Item 1 of § 13 appropriates $96,490 for salaries, and item 2, $19,000 for supplies and expenses to the state auditor for each of the years ending June 30, 1942, and June 30, 1943. Then follow these provisions:

"Of the amounts appropriated by Item 1, the sum of $43,170.60 for each year shall be paid and is hereby appropriated from the trunk highway fund on account of services to be performed by the

state auditor in auditing and keeping accounts and records of funds and bonds pertaining to trunk highways; auditing claims and issuing warrants against such funds; and filing contracts, conveyances and other papers pertaining to trunk highway matters.

"Of the amounts appropriated by Item 2, the sum of $8,067.40 for each year shall be paid and is hereby appropriated from the trunk highway fund on account of expenses and supplies necessarily furnished in the performance of duties prescribed by law on behalf of the Department of Highways."

Sections 14, 19, and 22 make similar appropriations to the state treasurer, civil service commission, and the commission of administration respectively. Each section contains provisions substantially like those pertaining to the appropriation to the state auditor.

Plaintiff's cause of action is predicated upon the claim that the appropriations here challenged result in the diversion of money from the trunk highway fund in violation of Minn. Const. art. 16. It may be noted that the legislature in anticipation of such a claim safeguarded the appropriations by inserting in each of the four involved sections the following:

"Provided, that in case such appropriations or any part thereof from the Trunk Highway fund may be adjudged unconstitutional by the Courts of this state, an equivalent amount for the aforesaid purposes is hereby appropriated from the General Revenue Fund."

Minn. Const. art. 16, provides:

"Section 1. There is hereby created and established a trunk highway system, which shall be located, constructed, reconstructed, improved and forever maintained as public highways, by the State of Minnesota."

After a detailed delineation of the routes of the various trunk highways throughout the state, § 2 provides:

"Section 2. There is hereby created a fund which shall be known as the trunk highway sinking fund. Said fund shall consist of the proceeds of any tax imposed on motor vehicles as herein authorized. The moneys in said fund shall be used for the payment of the principal and interest of any bonds which may be issued under the authority of this article; and any moneys in excess of such requirements shall be transferred to a fund which is hereby created and which shall be known as the trunk highway fund. The trunk highway fund shall be used solely for the purposes specified in section 1 of this article, and when duly authorized by legislative enactment to reimburse any county for the money expended by it subsequent to February 1st, 1919, in permanently improving any road hereinbefore specifically described, in accordance with plans and specifications therefor approved by the commissioner of highways."

Section 3 authorizes the legislature "to provide, by law, for the taxation of motor vehicles, using the public streets and highways of this state, on a more onerous basis than other personal property." It also provides that the proceeds of such tax shall be paid into the trunk highway sinking fund.

Section 4 authorizes the legislature to provide, by law, for the issue and sale of bonds to carry out the purposes of § 1 of said article.

Minn. Const. art. 9, permits the legislature to tax gasoline and oil. It reads in part (§ 5):

"The state shall never contract any debts for works of internal improvements, or be a party in carrying on such works, except as authorized by section 16 of Article 9, and by Article 16 of this Constitution, but it may levy an excise tax upon any substance, material, fluid, force or other means or instrumentality, or the business of dealing in, selling or producing any or all thereof, used or useful, in producing or generating power for propelling motor or other vehicles used on the public highways of this State, and shall place two-thirds of the proceeds of such tax in the Trunk

Highway Fund provided for in Section 2 of said Article 16, and one-third thereof in the State Road and Bridge Fund, and further except in cases where grants of land or other property shall have been made to the State, especially dedicated by the grant to specific purposes, and in such cases the state shall devote thereto the avails of such grants, and may pledge or appropriate the revenues derived from such works in aid of their completion."

Pursuant to the authority granted by the foregoing constitutional provisions, the legislature has imposed a motor vehicle registration tax, Minn. St. 1941, § 168.01, et seq. (Mason St. 1927, § 2672, et seq.), the proceeds of which are collected by the registrar of motor vehicles, paid into the treasury, and credited to the trunk highway sinking fund. It has also imposed a tax on gasoline and gasoline substances, Id. § 296.01, et seq. (§ 2720-70, et seq.), which is collected by the commissioner of taxation, deposited by him in the treasury, and credited to the trunk highway fund. All withdrawals of money from either source must be by warrants drawn by the state auditor on the treasurer. Thus, it will be seen that the handling of these funds, which run into millions of dollars each year, entails a large amount of administrative work on the part of both the auditor and the treasurer. It is conceded that the civil service commission and commissioner of administration also render extensive service to the highway department.

This is not the first time art. 16 has been before this court for consideration. In State ex rel. Wharton v. Babcock, 181 Minn. 409, 232 N. W. 718, it was held that L. 1929, c. 394, directing the commissioner of highways to pay out of the trunk highway fund certain sums of money as damages for injuries to persons and property caused "through the negligence of the highway department" was violative of art. 16, § 2, and therefore unconstitutional. Later, in State ex rel. Holm v. King, 184 Minn. 250, 238 N. W. 334, this court held that L. 1931, c. 306, § 7, providing for the appropriation of money from the highway fund to the motor vehicle division of the office of the secretary of state to defray expenses

in issuing licenses and collecting fees for the highway department, was constitutional. The decision was based upon the premise that the legislature had a free hand in regard to the means and methods of licensing and taxing motor vehicles.

By L. 1939, c. 431, art. II, § 20, the legislature attempted to impose upon the "taxes and fees" received by certain departments of the state government a charge of five percent, which was to be used to defray the expense of maintaining the offices of "the governor, the secretary of state, the state treasurer, the state auditor, the attorney general, the department of administration, the public examiner, the courts, and the legislature." In Cory v. King, 209 Minn. 431, 296 N. W. 506, we held the act violative of art. 16 upon the ground that expenses of constitutional offices such as the chief executive, legislature, and courts were not properly chargeable to the highway fund.

While these decisions are not determinative of the question here presented, they nevertheless shed some light on it. In State ex rel. Holm v. King, 184 Minn. 254, 238 N. W. 335, *supra,* the court said:

"Had the legislature placed the enforcement of this tax with the commissioner of highways and his staff of employes, who now are paid out of the funds established to carry out the purposes of art. 16, we would naturally expect that the expense connected with such enforcement of the tax would come out of the same funds. That the duty is instead placed on another state officer should make no difference."

In Cory v. King, 209 Minn. 434, 296 N. W. 508, *supra,* we said:

"Certain executive agencies such as the state highway patrol are properly incorporated with the highway department and the expense of their maintenance properly charged to the highway fund. It is equally plain, we assume, that the highway fund may, in a proper case, be required to reimburse other departments for special services to it. For example, when the public examiner makes an official audit of the highway department, we assume that there

may be no legal objection to charging that department with the cost.

"Such services are administrative in nature and so might be performed by the department itself and paid for out of the highway fund. Performed by other departments (as audits should be), there is no constitutional prohibition to their being charged against the highway fund. That is because the expense is directly chargeable to maintenance of highways."

We appreciate that the foregoing quotations are dicta, but they indicate the views of the court as to the constitutionality of legislation embodying the same or similar principles and in a way invite such legislation.

Article 16 contemplated an elaborate road program. The consummation of its purposes necessarily entails the expenditure of much time and money. In adopting the article the people of the state must have known that it would not function automatically and that it would have to be administered by some state agency or agencies. The details of administration could have been provided by the article had it been deemed prudent to do so. It was, however, delegated to the legislature to design such methods of administration as it deemed necessary to the accomplishment of its purposes. The legislature in turn might have charged the highway department with the entire administration of the article and the acts passed pursuant thereto, or it might, as it did, place a part of the work and responsibility in other departments of the government.

The framers of our constitution deemed it wise, and time has proved the soundness of their judgment, to anchor the financial affairs of the state government in the offices of the state auditor and state treasurer. Naturally, the moneys in the highway fund are kept under the guardianship of those two offices. Their burdens and duties have been materially increased by the growing operations of the highway department. Until the passage of L. 1941, c. 548, the expense has been borne principally by the general revenue fund of the state. As heretofore noted, the cases of State

ex rel. Holm v. King and Cory v. King, *supra,* indicated that certain state agencies performing administrative services for the highway department could in proper cases be reimbursed therefor from the trunk highway fund. Undecided, however, is the question here presented whether departments rendering divided services may be proportionately reimbursed. The point is made that there is no apportionment of highway fund money to highway department service in these four departments; in other words, that the money appropriated from the trunk highway fund is spread over the entire expense of each office and that other money appropriated to each office is used in part to pay expenses properly allocable to highway work and vice versa. We do not believe that to be the test or that it is necessary to earmark each dollar to each particular item of expense. The true test is whether the charge upon the highway fund accurately reflects highway expenses, as borne by the four offices and departments. It is essential to validity of an appropriation from the highway fund that no more money be taken than is necessary to defray the expenses properly attributable to highway matters. It appears from the stipulation and the court's findings that at the time of passing L. 1941, c. 548, the legislature had before it the necessary data to inform itself of the amount of expenditures reasonably attributable to highway matters.

As an additional safeguard the legislature provided in § 50 of the act that the use of money "for any other purpose than the purpose for which such moneys have been appropriated" is illegal, and provision is made for the immediate removal of any official using funds for purposes other than those specified in the appropriation.

We conclude that the appropriations in question do not violate Minn. Const. art. 16, and that plaintiff is not entitled to the relief prayed.

Affirmed.