# STATE EX REL. EMMA WHARTON v. C. M. BABCOCK.[1]

October 24, 1930.

No. 28,112.

*Frundt & Morse* and *Putnam & Carlson,* for appellant.

*Henry N. Benson,* Attorney General, *Charles E. Phillips,* Assistant Attorney General, and *Hayner N. Larson,* for respondent.

OLSEN, C.

The petitioner, Emma Wharton, appeals from an order sustaining a demurrer to the petition and alternative writ of mandamus herein.

L. 1929, p. 564, c. 394, directs the commissioner of highways to pay out of the trunk highway fund, to divers persons and parties therein named, certain sums of money as damages for personal injuries and damages to property caused "through negligence of the

[1]Reported in 232 N. W. 718.

employes of the Department of Highways." Section 10 of the act provides for payment of $2,700 to the petitioner, "Emma Wharton, widow of Clyde S. Wharton, whose death was caused as the result of the negligent maintenance of a bridge and approach thereto by the State Highway Department on Trunk Highway No. 9."

The commissioner of highways refused to make the payment, and this action was brought to compel him, by mandamus, to do so. The trial court sustained a general demurrer to the petition and alternative writ on the ground that L. 1929, p. 564, c. 394, is unconstitutional.

Until the amendment of the constitution in 1898, by the adoption of art. 9, § 16, the state was prohibited by § 5 of that article from expending money for or taking any part in the construction or maintenance of highways. By that amendment, as again amended in 1912, a state road and bridge fund was created out of income derived from investments in the internal improvement land fund and out of a general tax, not to exceed the rate of one mill per year, on all taxable property, the fund to be used for the purpose of lending aid in the construction and improvement of public highways and bridges. Under this amendment our system of state aid highways was established.

In 1920 the trunk highway amendment to the constitution, as art. 16, was adopted. Section 1 provides:

"There is hereby created and established a trunk highway system, which shall be located, constructed, reconstructed, improved and forever maintained as public highways, by the state of Minnesota."

Section 2, besides providing for a sinking fund to pay the principal and interest of any bonds issued for the purposes stated in § 1, creates a fund to be known as the trunk highway fund. The money in these funds is to consist of the proceeds of the tax to be imposed on motor vehicles. The section further provides:

"The trunk highway fund shall be used solely for the purposes specified in section 1 of this article, and when duly authorized by legislative enactment to reimburse any county for the money ex-

pended by it subsequent to February 1st, 1919, in permanently improving any road hereinbefore specifically described."

Inconsistent provisions of the constitution are repealed, but only so far as the same prohibit or limit the power of the legislature to enact laws authorizing or permitting the doing of the things authorized by art. 16.

After the adoption by the people of art. 16, the legislature enacted a general and comprehensive highway act, L. 1921, p. 406, c. 323. This act establishes the state highway department in charge of the commissioner of highways and empowers him to carry out the provisions of art. 16, § 1, that is, to locate, construct, reconstruct, improve and maintain the trunk highways specified in art. 16; and he is authorized to expend for these specified purposes such money as may be available in the trunk highway fund. The act contains many specific provisions as to his powers and duties in carrying out the provisions of art. 16, § 1. The act also gives him large control and supervision over state aid highways and empowers him to maintain such highways in case the county board of any county fails or neglects to do so, and to pay for such maintenance out of the state road and bridge fund.

The specific question presented for review is whether the provision of art. 16, § 2, of the constitution, that the trunk highway fund shall be used solely for the location, construction, reconstruction, improvement and maintenance of the trunk highways of the state, so limits the power of the legislature that it cannot appropriate money out of that fund to pay damages to one injured in his person or property as a result of negligence on the part of the highway department in maintaining a trunk highway.

Article 16 of the constitution is not an act of the legislature but an act of the people or electors of the state. If the meaning of any word, sentence, or section thereof is in doubt and search is to be made as to the intent of the lawmakers, we must go back to search for the intent of the electors of the state. A search of that kind may not be of great value. Neither do we hold that there is any serious doubt to be here resolved. But a brief consideration

of the situation may not be out of place. The people of the state desired better highways. They created a fund for the purpose of locating, building, improving, and maintaining such highways. To protect and preserve that fund and make certain that it should be used only for the purposes stated, they placed in the article a specific limitation that the fund should be used solely for the purposes stated. The language used is clear and limits the power of the legislature, as well as all other persons, in the use of the fund. It has always been the law here that the state is not legally liable for the negligence of any official or agent in the maintenance of highways. To hold that in adopting art. 16 the people intended that subsequent legislatures might use the trunk highway fund to pay damages for injuries to persons and property upon such highways, where there was no legal liability, however laudable the purpose, would be going far afield.

With the present trunk highway system and the rapid extension of state aid roads, the state will soon be in control of the major portion of all highways within its borders. If compensation is to be made on moral grounds for this class of damages, the trunk highway fund may soon be seriously depleted. With the extraordinary increase in motor traffic and in accidents on highways, the increase of damages resulting from or ascribed to slight or serious defects in highways or negligence of employes of the highway department is readily foreseen. On moral grounds there appears no valid reason why the state may not compensate also those suffering damage by reason of defects in or negligence in maintaining county and township roads. Counties and townships are essentially governmental agencies of the state. Their roads, as well as state roads, are public highways for the use of all the people of the state.

We appreciate the generous intent and good purpose of the act here attacked. Indeed, a change in our laws, if that could be made, imposing liability on the state and its subdivisions to the same extent as now imposed on cities and villages for defects in highways, would seem meritorious. But under existing constitutional

limitations the legislature may not use the trunk highway fund for the payment of such damages. The state has ample other funds over which the legislature has control not so limited.

There being no issue here concerning any question of the constitution, laws, or treaties of the United States, the legislature is the supreme legislative body of the state, and its power to enact laws is subject only to the express or clearly implied limitations thereon contained in the state constitution. 12 C. J. 748, 749, 750. State statutes are valid unless they are so clearly repugnant to the constitution as to leave no fair doubt as to their invalidity. State ex rel. Nordin v. Erickson, 119 Minn. 152, 137 N. W. 385, 41 L.R.A.(N.S.) 1181, Ann. Cas. 1914B, 19.

That the legislature may recognize a moral or equitable obligation of the state and grant compensation therefor or waive the state's immunity from suit, where no constitutional limitation interferes, is well settled. Sandel v. State, 115 S. C. 168, 104 S. E. 567, 13 A. L. R. 1268, note, p. 1276; Mills v. Stewart, 76 Mont. 429, 247 P. 332, 47 A. L. R. 424; Looney v. Stryker, 31 N. M. 557, 249 P. 112, 50 A. L. R. 1404, note, p. 1408; 26 R. C. L. 64.

So, in our present case, the legislature was well within its power in granting compensation to this petitioner, but could not grant such compensation out of a fund clearly set aside by constitutional provision solely for other specified purposes.

It is argued that compensation for injuries caused by negligence of the highway department or its employes is so clearly related to the construction and maintenance of the trunk highways that it may be considered in the nature of an expenditure for such purposes and properly paid out of the trunk highway fund. We are unable so to hold. While it may create a moral obligation on the part of the state, such expenditure in no way or degree furthers or contributes to the construction or maintenance of the highways.

Attention is called to the fact that by L. 1927, p. 449, c. 327, an appropriation was made from the state grain inspection fund to compensate the family of an employe of the grain inspection department for the death of such employe. But that fund was not

created, nor any limitation upon the use thereof made, by any constitutional provision. That fund remains under the control of the legislature.

It is further pointed out that employes of the highway department come under the workmen's compensation act and that such compensation is now paid out of the trunk highway fund under L. 1923, p. 303, c. 242. But workmen's compensation under our statute is a matter of contract, whereby the employer, as a part of the contract of employment, agrees to pay the compensation; and a basic underlying thought is that the business or industry shall pay the compensation as a business expense or part of the cost of production. State ex rel. Chambers v. District Court, 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347. The 1923 law has not been questioned. Under the construction given the workmen's compensation law, it would apparently be sustained on the theory that the compensation paid thereunder to employes of the highway department is part of the expense of constructing and maintaining the trunk highways.

Wages and salaries of officers and employes of the highway department are also paid out of the trunk highway fund. That these payments are part of the cost of constructing and maintaining the trunk highways is apparent.

It is argued that it is within the discretion of the legislature to determine what constitutes legitimate expenses of constructing and maintaining trunk highways, and that by enacting the law it has declared these damages to be such legitimate expenses. Whatever discretion the legislature has does not go to the extent of finding that something clearly not an expense of constructing and maintaining such highways is such an expense. Attention is also called to L. 1927, p. 509, c. 384. We are advised that the commissioner of highways has refused to make any payments under that law, and nothing further has been done thereunder.

On the precise question here involved, no case directly in point has been called to our attention.

The conclusion reached is that, by art. 16, § 2, of the constitution, the use of the trunk highway fund is clearly so limited that pay-

ment of damages cannot be made out of that fund to persons suffering loss through the negligence of the highway department in maintaining trunk highways.

Order affirmed.

HILTON, J. took no part.