ERNEST WESTERSON v. STATE.[1]

May 3, 1940.

No. 32,356.

[1]Reported in 291 N. W. 900.

*J. A. A. Burnquist,* Attorney General, *Sam W. Campbell,* Special Assistant Attorney General, and *Joseph J. Bright,* Special Counsel, for the State.

*A. D. Bornemann* and *Henry G. Young,* for respondent.

*Appel & Morton* and *Kelly & Le Vander, amici curiae,* filed a brief in support of certain points urged by respondent.

*J. J. Hadler, amicus curiae,* filed a brief in behalf of one A. J. Dale in support of the contention of respondent.

JULIUS J. OLSON, JUSTICE.

The state appeals from an order overruling its demurrer to the complaint. The court having certified the questions presented to be important and doubtful, the appeal is authorized.

Plaintiff is the owner of certain farm lands in Kittson county, parts of which are traversed by trunk highway No. 75 extending generally in a northerly and southerly direction through that county. The highway was laid out and constructed some time prior to 1937. In its construction and maintenance "large and extensive drainage ditches" were excavated on both sides thereof presumably to provide material for the roadbed, also to afford drainage. He claims that these ditches have been so unskillfully and negligently designed, constructed, and maintained as to gather and divert in large and destructive quantities surface waters from their natural courses and to be "precipitated" upon his lands, thereby causing damage to his crops in the amount of $580. In this sum he demands judgment with interest and costs, "under and pursuant to the terms" of L. 1939, c. 420, and more particularly § 4(12) thereof.

The demurrer is based upon the following grounds: (1) That the court has no jurisdiction of defendant's person nor of the subject of the action; (2) there is a defect of party-defendant; and (3) the facts alleged do not constitute a cause of action.

In its brief the state asserts that while the act mentioned "waived immunity from suit" it waived "nothing else." It takes the position that "because existing law and constitutional provisions do not permit a recovery against the state" no liability has or can be attached to it, for, as it is said, the "state is not legally liable for the negligence of any official or agent in the maintenance of highways." In support of this contention it cites and relies upon State ex rel. Wharton v. Babcock, 181 Minn. 409, 412, 232 N. W. 718.

1. There is no question about the state having waived immunity to this action for under § 1 of the act the state thereby "waives immunity from suit for any damages   *   *   *   caused

by the location, relocation, construction, reconstruction, improvement, maintenance and supervision of the trunk highway system." Section 2 provides that the claimants named therein "may severally bring action against the state" within the time therein limited. Plaintiff has complied with all the provisions of the act respecting timeliness, service of summons, venue, and in pleading the facts upon which the state, under the terms of the act, waived immunity. Under § 4 are listed:

"The respective names of each of said claimants and the amounts of said respective claims are as follows, to-wit: * * *

"12. Ernest Westerson, reimbursement for damages suffered to crops during the years 1937 and 1938 by flood waters caused by the negligence of the Highway Department in not providing sufficient and adequate outlet ditches to handle the water carried by ditches alongside Trunk Highway No. 75, in Kittson County, Minnesota ........................................ $580.00."

For plaintiff it is urged that inasmuch as the complaint alleges all of the facts prescribed by the legislature as conditions for right of recovery it is sufficient and states a cause of action. This upon the theory that governmental agencies, to the extent that they are amenable to suit, are liable for the wrongful flooding of land in the course of highway construction and maintenance. He asserts that in the present case the state, having waived immunity from suit, is liable for the resulting injury under the statute and, in any event, at common law; that the state is in no other or better position than a private owner who commits like acts.

2. A claim statute such as this may of course recognize legal obligations if it sees fit so to do. As such it may compensate by direct appropriation or it may waive immunity from suit. State ex rel. Wharton v. Babcock, 181 Minn. 409, 232 N. W. 718.

3. This being so, we think it naturally follows that if the latter method is employed the legislature may prescribe such terms and conditions for recovery as it deems appropriate. Here, as we have seen, the terms and conditions upon which recovery is founded are stated in the act, and, the complaint being re-

sponsive to these, it would seem that liability should follow. We think it is apparent that the legislature intended to compensate for injury done by waiving its sovereign immunity to suit. To hold otherwise would virtually give plaintiff a mere right to sue but leave him with only a nonexistent cause. Such a construction would amount to a total destruction of the obvious beneficent purpose of the act. The trial judge aptly said:

"It should not be assumed that the legislature intended that the claimants named were to be put to the expense of instituting and maintaining actions, nor the county and state to the expense incident to the conduct and trial of such actions, * * * if it did not intend that the state should be held liable for damages * * *."

4. The state relies upon the principle that a governmental agency is not answerable for damages sustained as the result of the negligence of its officers or agents in the performance of governmental functions. This rule has been recognized by this court in many cases. As a result the application of this doctrine to specific instances has led to the holding of nonliability by reason of the failure of highway officers to keep highways, bridges, culverts, and the like in repair. Altnow v. Town of Sibley, 30 Minn. 186, 14 N. W. 877, 44 A. S. R. 191; Weltsch v. Town of Stark, 65 Minn. 5, 67 N. W. 648; Emmons v. City of Virginia, 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 860.

5. But the rule has its well settled exceptions, for it has long been the law in this state that towns and counties charged with highway construction and maintenance are liable in damages to property owners if and when the owners' property rights are invaded. This exception is designed, and necessarily so, to protect the owner against illegal exercise of the power of eminent domain. Minn. Const. art. 1, § 13. In Peters v. Town of Fergus Falls, 35 Minn. 549, 29 N. W. 586, this is directly and unequivocally so determined. There the township was held liable because, having possession and control of the highway, it stood in the same position as that of a private owner and as such had

no more or greater right to invade adjoining lands than any private owner. The court recognized the distinction between the doctrine of nonliability in the Town of Sibley case, 30 Minn. 186, 14 N. W. 877, by showing its inapplicability to the facts presented in the Peters case in this way (35 Minn. 551-552, 29 N. W. 587):

"In respect to laying out and keeping in repair highways, the town is to be regarded as the agent of the state, and for nonaction in the premises it is not liable to individuals.

"Is it liable to private persons for injuries caused by acts of misfeasance, in performing a duty it owes to the state, by a negligent or unskilful performance of it? The duty imposed upon the town of constructing and keeping in repair highways puts it in possession and control of them for those purposes, and gives it a qualified or special property in the land over which they run. It stands, so far as respects adjacent property, in the position of owner. * * * The right to cause damage to adjacent lands in the town's management and control of the highway, beyond that which a private owner may, without liability, cause to the lands of others by acts done on his own land, *must be acquired through the right* of *eminent domain.* O'Brien v. City of St. Paul, 25 Minn. 331, 33 Am. R. 470, and cases cited." (Italics supplied.)

And this distinction has been consistently followed and applied in our later cases. Gunnerus v. Town of Spring Prairie, 91 Minn. 473, 98 N. W. 340, 974; Lindstrom v. County of Ramsey, 136 Minn. 46, 161 N. W. 222; Kiefer v. County of Ramsey, 140 Minn. 143, 167 N. W. 362.

6. The act is also assailed upon the theory that "a negligence claim cannot be paid out of the trunk highway fund" because violative of Minn. Const. art. 16, § 2, as interpreted in State ex rel. Wharton v. Babcock, 181 Minn. 409, 412, 232 N. W. 718.

Under the act (L. 1939, c. 420, § 2) it is provided:

"In case a judgment is rendered against the State, the Commissioner of Highways is requested and directed * * * to pay to the judgment creditor the amount of such judgment out of the

trunk highway fund or out of funds accredited thereto from highway patrol fines or other sources."

We do not believe that determination of this particular question is essential to decision upon demurrer, for the main purpose of the act, apparent on its face, is the determination of whether there is liability and the extent thereof. If liability is not established, that ends claimant's cause as in any other case. If there be liability and judgment pursuant thereto entered, claimant stands in much the same situation as any other judgment creditor. Then and then only the means and methods of collection come into play. The legislature in adopting the act deemed it prudent not to make payment until the facts upon which liability is predicated are first determined by court procedure. Many acts authorizing judicial or quasi judicial action to establish liability are not and in their very nature could not be coupled with appropriations. As an example one may refer to the United States Court of Claims. So, in this case, if the question of payment comes into play, then and then only need anyone be concerned about it. Liability established and the amount thereof determined by judgment, means of payment will, as always, be within the legislative field. *Cf.* State ex rel. Chase v. Preus, 147 Minn. 125, 179 N. W. 725.

7. We do not think the provisions in respect to liability and the manner and means of enforcing payment are so inseparably interwoven as to lead to the conclusion that the legislature would not have passed the one without the other. If the part dealing with payment is vulnerable to the attack made, the liability part of the act can well be allowed to stand. Saari v. Gleason, 126 Minn. 378, 148 N. W. 293.

In passing it may not be inappropriate to suggest (we are not so deciding) that the constitutional fund created by art. 16 consists of the proceeds collected from motor vehicle taxes. Highway fines do not arise under or by virtue of this provision, so that fund is subject to legislative control, 3 Mason Minn. St. 1940 Supp. § 2554, subd. 18(b), and may be used for the same pur-

poses for which the constitutional fund is devoted, or put to use for some other purpose, such as is provided for by the present act.

Order affirmed.