DOLLY JUNE WHITE v. STATE.
LAVERNE WHITE v. STATE.
HANNAH N. WALSH v. STATE.
EUGENE DENNISON v. STATE.
FRED E. DENNISON v. STATE.[1]

October 8, 1943.

Nos. 33,646, 33,647, 33,648, 33,649, 33,650, 33,651, 33,652.

[1] Reported in 11 N. W. (2d) 151.

*J. A. A. Burnquist,* Attorney General, *Arthur Christofferson,* Deputy Attorney General, and *Louis B. Brechet* and *F. J. McPartlin,* Special Assistant Attorneys General, for the State.

*Ernest A. Rich,* for respondents.

JULIUS J. OLSON, JUSTICE.

The state appeals from orders overruling its general demurrers to the complaints herein, the court having certified the question presented thereby to be important and doubtful, as required by our statute.

Seven cases are involved, but, since all of them have for their foundation the same facts upon which liability here is predicated, we shall limit our discussion to the Dennison case.

On June 21, 1941, there was a washout on trunk highway No. 71

between Sauk Centre in Stearns county and the village of Little Sauk in Todd county. The washout created a serious and imminent danger to traffic, since the road was destroyed to almost its full width and was from five and one-half to six feet in depth. A state maintenance crew undertook to repair the job, but had only partially succeeded in so doing when darkness came. The portion of the highway upon which plaintiff's intestate was lawfully and properly traveling was left open and unguarded. The state's maintenance crew wholly failed to provide barriers, signals, or flares to warn traffic of the dangerous condition. By reason thereof, the car in which she was riding as a guest passenger was precipitated into the hole, the car demolished, plaintiff's intestate killed, and others injured. Decedent's death is claimed to be due to the negligence of the servants of the state in failing to patrol and provide barriers, flares, or other warning signals to inform the traveling public of the dangerous condition. Recovery is sought under the provisions of L. 1943, c. 662.

It is asserted as ground for reversal here that "no legal claims were presented to the legislature" by the plaintiff; that, since the state "owed no duty and was under no obligation" to plaintiff under the law as it was when the accident occurred, therefore no liability attached to it, although it is conceded that the act mentioned grants plaintiff the right to sue; in other words, that the state has waived immunity to suit but has not waived its sovereign right to claim immunity from liability in the circumstances here appearing. It maintains that the statute "must be strictly construed," since it is an abrogation of the common law to hold the state liable where there was no "legal liability" at the time the claimed cause of action arose. It also challenges the act as violative of the provisions of Minn. Const. art. 4, § 33.

L. 1943, c. 662, upon which plaintiff's cause is founded, is so similar to the one imposing liability upon the state in Westerson v. State, 207 Minn. 412, 291 N. W. 900, as virtually to make that case decisive of the issues presented here. But a résumé of its provisions may be helpful. It is labeled in its title:

"An act providing for the *determination and payment of certain claims against the state* arising out of the location, construction, reconstruction, improvement, and maintenance of the trunk highway system * * *." (Italics supplied.)

Section 1 provides:

"*Any of the persons,* firms, or corporations hereinafter named," where claims for damages had been submitted to the legislature for action, the nature and amount thereof being specified, "*may bring an action against the State upon such claim for damages* * * * in the district court of any county wherein any part of the claim arose," but requiring that such action be commenced within six months after the passage of the act.

By § 2, the summons and complaint must be served upon the attorney general, who is required to "defend the action."

Section 3 provides:

"All such actions shall be heard and determined as other civil actions and shall be subject to all applicable laws and rules. *In case a judgment is rendered against the state, the commissioner of highways is requested and directed* upon receiving receipt and discharge in full, *to pay the judgment creditor, the amount of such judgment out of the trunk highway fund or out of funds accredited thereto* from highway patrol fines or other sources," but no judgment may exceed the amount of the claim as specified in the act, and "such judgments shall be payable only from appropriations therefor, as herein provided."

By § 4, the commissioner is "authorized *to pay, compromise, adjust or settle any or all of the respective claims herein referred to* in any amount not to exceed the amounts respectively authorized herein" out of the specified funds.

By § 5, "*There is hereby appropriated* out of the trunk highway fund or funds accredited thereto from highway patrol fines or other sources *such sums as may be necessary to pay any of the claims as herein provided.*"

Section 6 contains a list of claims submitted to the legislature which are included in the act as being applicable to and within its terms. Applicable to the present action is subparagraph *i*, which provides:

"The Special Administratrix of the Estate of Edna Dennison, deceased, for personal injuries resulting in the death of Edna Dennison by reason of the negligence of the Highway Department on June 21, 1941, on Trunk Highway No. 71, in Todd County . . $10,500.00." (Italics supplied.)

Here, as in Westerson v. State, 207 Minn. 412, 414, 291 N. W. 900, 901, much of defendant's argument is identical with what was there asserted. There, as here, it was said "that while the act mentioned 'waived immunity from suit' it waived 'nothing else.'" And there, too, it took "the position that 'because existing law and constitutional provisions do not permit a recovery against the state' no liability has or can be attached to it, for, as it is said, the 'state is not legally liable for the negligence of any official or agent in the maintenance of highways.'" In that case also Westerson's cause was founded upon the claimed negligence of the state's highway officers in having "so unskillfully and negligently designed, constructed, and maintained [the highway] as to gather and divert in large and destructive quantities surface waters from their natural courses," thereby precipitating same upon his lands, "causing damage to his crops." And so here, the state's liability is predicated upon the negligent conduct of its officers having these matters in hand. The legislative purpose is the same in both cases. In both of them compensation is provided for those who have suffered harm caused by negligent conduct on the part of the state's agents, servants, and employes.

Since "the fundamental aim of construction is to ascertain and give effect to the intention of the legislature, as expressed in the language used," so that "such intent should control" (6 Dunnell, Dig. & Supp. § 8940, and cases under notes), we can see no escape from reaching the conclusion that the clear purpose and in-

tent of the legislature was not only to lift the bar to the state's immunity to suit but likewise its immunity to liability. Westerson v. State, *supra*.

■ Much has been made by the state of its supposed immunity to liability in this case because plaintiff's claim is not a "legal" one, having for its foundation only a "moral" obligation. We think this argument is answered adequately by the rule well stated in 25 R. C. L. p. 402, § 34:

"The legislature has a right to appropriate the public funds in discharge of the state's duty, whether the duty be legal or only moral. And the discharge of such an obligation is always regarded as a legitimate exercise of governmental power. An appropriation made in discharge of a moral obligation resting upon the state must be regarded as being for a public purpose, and within the constitutional powers of the legislature, and the fact that a private person may receive the benefit of such an appropriation does not constitute the act of appropriation a private one." The supporting cases are found under notes 6, 7, and 8.

■ Lastly, as against the state's claim that this is a special act and, as such, violative of Minn. Const. art. 4, § 33, we think Dike v. State, 38 Minn. 366, 367, 38 N. W. 95, 96, disposes of that objection, where Mr. Justice Mitchell, speaking for the court, held:

"In short, the legislature, instead of investigating the facts themselves, and then appropriating the money absolutely, referred the investigation to the district court, and appropriated the money to pay the claims, conditioned upon the court's finding that they were of the character and description provided for in the fourth section of the act of 1881. Had the legislature adopted the first course, it seems to us that no one would have questioned the constitutionality of the act; but there is no difference in principle between that case and this. *The appropriation of money to pay these claims, whether conditionally or unconditionally, and whether as a gift or in settlement of an obligation, moral or legal, was not the grant of a 'privilege' within the meaning of the constitution.* The language of the

constitution was never intended to apply to such a case. If it did, the legislature could never appropriate money to pay a particular claim without passing a general law paying every other claim. The object of the constitutional amendment was to prohibit special or private legislation on certain subjects, which could be provided for by general laws. This is clearly indicated by the second section, which makes it the duty of the legislature to provide general laws for the transaction of any business that may be prohibited by section 1, which laws are to be uniform in their operation throughout the state. *That the appropriation of moneys out of the state treasury could not be provided for by general laws is a proposition that requires no argument.*" (Italics supplied.)

The order overruling the state's general demurrer to the complaint in each of the seven cases here for review is affirmed.

Affirmed.

MR. JUSTICE LORING, absent because of accidental injuries, took no part in the consideration or decision of this case.

