**In re INDIVIDUAL 35W BRIDGE LITIGATION.**

**Nos. A10–87, A10–89, A10–90, A10–91.**

Court of Appeals of Minnesota.

Aug. 24, 2010.

David F. Herr, James Duffy O'Connor, Kirk O. Kolbo, Rita O'Keeffe, Nicole Narotzky, Abigail Richey–Allen, Maslon Edelman Borman & Brand, L.L.P., Minneapolis, MN, for appellant, Jacobs Engineering Group Inc.

Lori Swanson, Attorney General, Alan I. Gilbert, Solicitor General, Kristyn Anderson, Gary Cunningham, Assistant Attorneys General, St. Paul, MN, for respondent, Minnesota Department of Transportation.

Considered and decided by PETERSON, Presiding Judge; LANSING, Judge; and STAUBER, Judge.

## OPINION

STAUBER, Judge.

Appellant challenges the denial of its motion to dismiss the cross-claims of respondent Minnesota Department of Transportation (the state) for contractual contribution and indemnity and for statutory reimbursement arising out of the collapse of the Interstate Highway 35W bridge in 2007. Appellant argues that: (1) Minn. Stat. § 541.051 (2008) bars the state's claims; (2) the compensation statutes passed after the collapse unconstitutionally impair the 1962 contract between the bridge designer and the state; (3) settlement agreements between the state and some of the plaintiffs bar the state's claims; and (4) appellant is not required to reimburse the state for "voluntary" payments made to survivors of the collapse under the compensation statutes. We affirm.

## FACTS

In October 1962, an engineering firm then known as Sverdrup & Parcel and Associates Inc. (Sverdrup) entered into a contract with the state. Sverdrup agreed to design a bridge that would carry Trunk Highway No. 35W across the Mississippi River in Minneapolis. Sverdrup also agreed to indemnify the state for "any and all claims, demands, actions or causes of action of whatsoever nature or character arising out of or by reason of the execution or performance of the work ... provided

for under this agreement." Sverdrup certified the final design plans for the bridge in March 1965, and construction of the bridge was substantially completed in 1967.

In 2003, the state contracted with URS Corporation (URS) to inspect the bridge and recommend repairs. In 2007, the state contracted with Progressive Contractors Incorporated (PCI) to repair the bridge. The repair project began in June 2007 and was scheduled to be completed in September 2007.

On August 1, 2007, the bridge collapsed. Thirteen people were killed, and more than 100 were injured. Legislation was passed to compensate survivors[1] of the collapse. *See* Minn.Stat. §§ 3.7391–.7395 (2008) (the compensation statutes). The state entered into settlement agreements with 179 survivors who made statutory claims for compensation, paying them $36,640,000 through the compensation statutes and $398,984.36 from the emergency-relief fund. The compensation statutes provide that the state may seek reimbursement for these payments:

> Notwithstanding any statutory or common law to the contrary, the state is entitled to recover from any third party, including an agent, contractor, or vendor retained by the state, any payments made from the emergency relief fund or under section 3.7393 to the extent the third party caused or contributed to the catastrophe.[2] The state is entitled to

be reimbursed regardless of whether the survivor is fully compensated.

Minn.Stat. § 3.7394, subd. 5(a).

More than 100 separate actions related to the collapse were filed in Hennepin County District Court. The district court consolidated these actions and sorted them into nine categories. The cases underlying this appeal are the Schwebel firm's wrongful-death and personal-injury cases. The plaintiffs here, some of whom settled with the state under the compensation statutes, sued URS and PCI for negligence and breach of contract. PCI asserted third-party claims against appellant Jacobs Engineering Group Inc. (Jacobs), which acquired Sverdrup in 1999, and against the state. URS sued Jacobs and PCI.

The state sued Jacobs, alleging that Sverdrup negligently designed the bridge, breached its 1962 contract with the state, and contributed to the collapse. The state cross-claimed against Jacobs, alleging three causes of action: (1) common-law contribution and indemnity; (2) contractual contribution and indemnity; and (3) reimbursement pursuant to the compensation statutes.[3]

Jacobs moved to dismiss the state's cross-claims pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted. After a hearing, the district court denied Jacobs's motion.

Jacobs sought review of the district court order denying its motion to dismiss.

---

1. "Survivor" is defined as "a natural person who was present on the I–35W bridge at the time of the collapse." Minn.Stat. § 3.7392, subd. 8. "Survivor" also includes the parent or legal guardian of a survivor who is under the age of 18, a survivor's legally appointed representative, and the surviving spouse or next of kin of a deceased survivor. *Id.*

2. "Catastrophe" is defined as the collapse of the bridge. Minn.Stat. § 3.7392, subd. 2.

3. The state also sued PCI. In November 2009, PCI and the state settled their claims against each other. Because the state's common-law claim against Jacobs derived solely from PCI's claims against the state, the common-law claim for contribution and indemnity is not at issue in this appeal.

This court questioned whether the order was appealable as a matter of right, dismissed the appeal without prejudice, and remanded for the district court to rule on the applicability of Minn.Stat. § 541.051 to the state's claim of contractual contribution and indemnity. After receiving further submissions from Jacobs and the state, the district court issued an amended order that addressed the application of section 541.051 and again denied Jacobs's motion to dismiss.

Jacobs appealed the original and amended orders. This court granted Jacobs's request for discretionary review of certain issues.

## ISSUES

I. Does Minn.Stat. § 541.051 bar the state's claims against Jacobs?

II. Are Jacobs's due-process rights violated by the retroactive revival of the state's claims?

III. Do the compensation statutes unconstitutionally impair Sverdrup's 1962 contract with the state?

IV. Is the state prohibited from pursuing its statutory reimbursement claim against Jacobs because (1) *Pierringer* settlements preclude a settling defendant from asserting indemnity claims against a non-settling defendant or (2) the state's payments under the compensation statutes were "voluntary"?

## ANALYSIS

When reviewing a district court's decision on a motion to dismiss pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim upon which relief can be granted, the question before this court is whether the complaint sets forth a legally sufficient claim for relief. *See Hebert v.*

*City of Fifty Lakes,* 744 N.W.2d 226, 229 (Minn.2008) (stating standard of review when a case has been dismissed pursuant to rule 12.02(e)). We consider only the facts alleged in the complaint, accept those facts as true, and construe all reasonable inferences in favor of the nonmoving party. *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003). But we may consider matters outside the pleadings if the pleadings refer to or rely on the outside matters. *In re Hennepin County 1986 Recycling Litig.,* 540 N.W.2d 494, 497 (Minn.1995) (considering contracts central to the dispute). The standard of review is de novo. *Bodah,* 663 N.W.2d at 553.

## I.

We first consider Jacobs's argument that the current version of section 541.051, which limits the time within which actions may be brought for damages based on services or construction to improve real property, bars the state's claims against Jacobs for contractual contribution and indemnity and for statutory reimbursement.[4] The construction and applicability of a statute of limitations or repose is a question of law, which we review de novo. *State Farm Fire & Cas. v. Aquila Inc.,* 718 N.W.2d 879, 883 (Minn.2006).

[An appellate court's] goal when interpreting statutory provisions is to ascertain and effectuate the intention of the legislature.... [The appellate court] determine[s] legislative intent primarily from the language of the statute itself. If the text is clear, statutory construction is neither necessary nor permitted and [the appellate court] appl[ies] the statute's plain meaning.

*Brayton v. Pawlenty,* 781 N.W.2d 357, 363 (Minn.2010) (quotations and citations omitted).

---

4. For brevity, we will refer to these claims as indemnity claims.

A brief summary of the history of section 541.051 is helpful in reviewing its application to the facts here. In 1939, Minnesota adopted a rule that building contractors could be liable to parties with whom no privity of contract exists. *Murphy v. Barlow Realty Co.*, 206 Minn. 527, 531–36, 289 N.W. 563, 565–67 (1939). "This rule, coupled with holdings in some cases that the statute of limitations does not begin to run until the wrong giving rise to that action is discovered, resulted in greatly increased exposure of architects, engineers, and contractors over an extended period of time." *Pac. Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn.1977). In response to this extended exposure to liability, the Minnesota legislature enacted section 541.051. 1965 Minn. Laws ch. 564, § 1, at 803; *see Lietz v. N. States Power Co.*, 718 N.W.2d 865, 870 (Minn.2006) (presuming that section 541.051 was part of a national trend to protect the construction industry after the abrogation of the privity-of-contract doctrine); *Pac. Indem. Co.*, 260 N.W.2d at 554–55 (noting that Minnesota and other states responded to this extension of liability by enacting statutes to nullify causes of action not asserted within the statutory time limit).

Enacted in 1965, the original version of section 541.051, subdivision 1, provided that an action—including one for contribution or indemnity—to recover damages for an injury arising out of the defective and unsafe condition of an improvement to real property could not be brought more than two years after the discovery of the injury. Minn.Stat. § 541.051, subd. 1 (1965). In addition to this two-year limitations provision, subdivision 1 included a repose provision providing that no action to recover damages for an injury arising out of the defective and unsafe condition of an improvement to real property could be brought more than 10 years after the com-

pletion of the improvement. *Id.*; *see also U.S. Home Corp. v. Zimmerman Stucco & Plaster, Inc.*, 749 N.W.2d 98, 102 (Minn. App.2008) (*Zimmerman*) (explaining the difference between a limitations provision, which bars an action if a plaintiff does not file suit within a set period of time after a cause of action accrues; and a repose provision, which bars a suit a fixed number of years after the defendant has acted, regardless of when the injury was discovered), *review denied* (Minn. Aug. 5, 2008). Subdivision 2 of the original version of section 541.051 provided that if an injury occurred during the tenth year after the completion of the improvement, an action could be brought within one year of the injury but not more than 11 years after the completion of the improvement. Minn. Stat. § 541.051, subd. 2 (1965).

In 1977, the Minnesota Supreme Court held section 541.051 unconstitutional because the statute granted immunity from suit to a certain class of defendants without a reasonable basis for the classification. *Pac. Indem. Co.*, 260 N.W.2d at 555. In 1980, the legislature sought to cure the statute's constitutional defects by eliminating the distinction between certain defendants. *See* 1980 Minn. Laws ch. 518, §§ 2–3, at 595–96; *see also Calder v. City of Crystal*, 318 N.W.2d 838, 839 (Minn. 1982) (characterizing the 1980 amendments as an attempt to cure the statute's constitutional defects). The legislature also extended the repose provision of section 541.051, subdivision 1, to 15 years. 1980 Minn. Laws ch. 518, § 2, at 596. And subdivision 2 was altered to provide that if an action accrued during the fourteenth or fifteenth year after the date of substantial completion of the construction, an action could be brought within two years of the date of accrual but not more than 17 years after substantial completion of the construction. *Id.* § 3, at 596.

In 1986, the legislature shortened the repose provision of section 541.051, subdivision 1, to ten years. 1986 Minn. Laws ch. 455, § 92, at 885. Subdivision 2 was amended to provide that if an action accrued during the ninth or tenth year after substantial completion of the construction, an action could be brought within two years of the date of accrual but not more than 12 years after substantial completion. *Id.* at 885–86.

In 1988, the legislature added language to section 541.051, subdivision 1, providing that a cause of action for contribution or indemnity accrues "upon payment of a final judgment, arbitration award or settlement arising out of the defective and unsafe condition." 1988 Minn. Laws ch. 607, § 1, at 681.

In 2006, the Minnesota Supreme Court decided *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634 (Minn.2006). In *Weston,* a general contractor substantially completed a home in July 1993. 716 N.W.2d at 636. In May 2003, approximately two months before the end of the ten-year period of repose, the general contractor was sued for problems with the home. *Id.* at 636–37. After the ten-year period of repose had run, but within 12 years after substantial completion of the home, the general contractor brought contribution and indemnity claims against its supplier and subcontractors. *Id.* at 637. The supreme court held that Minn.Stat. § 541.051 (2002) "bars a contribution and indemnity claim that has not accrued (i.e., where the principal claim has not been paid) and has not been brought within the 10 years from the completion of the construction." *Id.* at 640. The supreme court noted that if the legislature had wanted "to declare a separate and different repose period for contribution and indemnity claims, it could have done so explicitly." *Id.* at 639.

The legislature's most recent changes to section 541.051 were made in May 2007. 2007 Minn. Laws ch. 105, § 4, at 625–26; 2007 Minn. Laws ch. 140, art. 8, § 29, at 1535–36. These amendments removed the references to contribution and indemnity claims from subdivision 1(a) and created subdivision 1(b) to address such claims. *Id.*; *Zimmerman,* 749 N.W.2d at 102. The current version of section 541.051, subdivision 1, provides, in relevant part:

(a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury, nor in any event shall such a cause of action accrue more than ten years after substantial completion of the construction....

(b) Notwithstanding paragraph (a), an action for contribution or indemnity arising out of the defective and unsafe condition of an improvement to real property may be brought no later than two years after the cause of action for contribution or indemnity has accrued, *regardless of whether it accrued before or after the ten-year period referenced in paragraph (a).*

(c) For purposes of paragraph (a), a cause of action accrues upon discovery of the injury; provided, however, that in the case of an action for contribution or indemnity under paragraph (b), a cause of action accrues upon the earlier of commencement of the action against the

party seeking contribution or indemnity, or payment of a final judgment, arbitration award, or settlement arising out of the defective and unsafe condition.

Minn.Stat. § 541.051, subd. 1 (2008) (emphasis added). The legislature also added the following sentence to subdivision 2: "Nothing in this subdivision shall limit the time for bringing an action for contribution or indemnity." *Id.*, subd. 2 (2008).

The current version of section 541.051 contains a two-year limitations provision that applies to all actions, including those for contribution or indemnity. *Id.*, subds. 1(a), 1(b). Section 541.051 also contains a ten-year repose provision. *Id.*, subd. 1(a). But this repose provision does not apply to actions for contribution or indemnity. *Id.*, subd. 1(b) (providing that an action for contribution or indemnity may be brought at any time, so long as the action is brought within two years of its accrual); *Zimmerman*, 749 N.W.2d at 103 (concluding that the 2007 amendments to section 541.051 "remove[d] the ten-year repose barrier" to the timely assertion of indemnity claims).[5]

■ Jacobs contends that the state's indemnity claims became barred in 1977, ten years after substantial completion of the bridge. The resolution of this issue hinges upon whether the 2007 amendments to section 541.051 apply retroactively to revive the state's indemnity claims. *See Larson v. Babcock & Wilcox*, 525 N.W.2d 589, 590–92 (Minn.App.1994) (holding that 1990 amendment to section 541.051 excluding certain defendants from the statute's protections was not retroactive and, therefore, claims of plaintiffs injured in 1990 were not revived against designer of an improvement completed in 1953).

In *Zimmerman*, this court addressed whether the 2007 amendments to section 541.051 operate to revive indemnity and contribution claims. 749 N.W.2d at 100. In that case, a general contractor was sued on May 4, 2004, for negligent construction of a home that was completed in October 1994. *Id.* On May 3, 2006, the general contractor asserted indemnification and contribution claims against a subcontractor that was not party to the original suit. *Id.* The district court granted summary judgment to the subcontractor in March 2007 because of the ten-year repose provision in Minn.Stat. § 541.051 (2004). *Id.* In May 2007, while the general contractor's appeal was pending, the governor signed into law the legislation that amended section 541.051. *Id.* Because the legislation included the word "retroactive," this court held that the legislature had clearly manifested its intent that the 2007 amendments to section 541.051 be applied retroactively.[6]

---

**5.** While the legislature may have intended, as a response to the *Weston* decision, for the 2007 amendments to create a 12–year repose period for indemnity and contribution claims, we cannot disregard the clear language of section 541.051 that no period of repose applies to actions for contribution or indemnity. *See Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn.2007) (stating that an appellate court "will not disregard a statute's clear language to pursue the spirit of the law").

**6.** The governor signed two separate session laws, both of which amended section 541.051. *See* 2007 Minn. Laws ch. 105 (signed by the governor on May 21, 2007); 2007 Minn. Laws ch. 140 (signed by the governor on May 25, 2007). These separate amendments to the statute are substantively the same except for their effective dates. One is "effective retroactively from June 30, 2006"; the other is "effective retroactive to June 30, 2006." *Compare* 2007 Minn. Laws ch. 105, § 4, at 626, *with* 2007 Minn. Laws ch. 140, art. 8, § 29, at 1536. That is, one session law applies the amended section 541.051 retroactively from May 22, 2007 *to* June 30, 2006; the other applies the amended section 541.051 retroactively *from* June 30, 2006 indefinitely into the past. The combined effect of the two session laws is the continuous

*Id.* at 101; *see also* Minn.Stat. § 645.21 (2008) ("No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."); *Duluth Firemen's Relief Ass'n v. City of Duluth*, 361 N.W.2d 381, 385 (Minn.1985) (stating that legislature's mention of the word "retroactive" is clear evidence of intent that statute be applied retroactively).

█ The legislature's power to enact retroactive legislation extends to the revival of claims that have already been barred by the passage of time. *Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 417 (Minn.2002). Jacobs argues that the legislature did not expressly indicate that the 2007 amendments were intended to revive claims that had already become time-barred. But the supreme court has held that where, as here, the legislature has expressed its clear and manifest intent that a statute apply retroactively, the statute also acts to revive claims unless the legislature expresses a contrary intent in the plain language of the statute. *See id.* at 418. Because nothing in the language of the 2007 amendments indicates that the legislature intended to make the amendments retroactive without also reviving time-barred claims, we hold that the retroactive application of the current version of section 541.051 revives the state's indemnity claims against Jacobs.[7] *See Zimmerman*, 749 N.W.2d at 101–04 (holding that a general contractor's claims for contribution and indemnity were revived by the retroactive application of Minn.Stat. § 541.051 (Supp.2007)).

## II.

█ We next address Jacobs's contention that revival of the state's indemnity

claims through the retroactive application of the 2007 amendments to section 541.051 violates Jacobs's "vested right to repose." In *Zimmerman*, this court addressed whether section 541.051, as amended in 2007, violates due process by reviving indemnity and contribution claims that have already become time-barred. 749 N.W.2d at 101. This court acknowledged that the Fourteenth Amendment prohibits the legislature from enacting retroactive legislation that divests a private vested interest. *Id.* But this court held that the subcontractor in *Zimmerman* had no vested right that implicated the Fourteenth Amendment because judgment had not become final. *Id.* at 101, 103. This court explained:

A right is not vested unless it is something more than a mere expectation, based on an anticipated continuance of present laws. It must be some right or interest in property that has become fixed or established, and is not open to doubt or controversy. Accordingly, ... there is no vested right in an existing law nor in an action until final judgment has been entered therein.

*Id.* at 101 (emphasis omitted) (quotations and citations omitted). What Jacobs characterizes as a vested right not to be sued is merely Jacobs's expectation that a repose provision—enacted in 1965, declared unconstitutional in 1977, reenacted in 1980, and altered several times since—would protect it indefinitely. We therefore hold that Jacobs has no vested right that is affected by the retroactive application of the current version of section 541.051.

## III.

█ We now turn to Jacobs's argument that the compensation statutes un-

---

retroactive application of amended section 541.051 from May 22, 2007 indefinitely into the past.

7. It is undisputed that the state brought its indemnity claims within two years after the date of accrual of the cause of action. *See* Minn.Stat. § 541.051, subds. 1(a), 1(b).

constitutionally impair the 1962 contract between Sverdrup and the state. We review the constitutionality of a statute de novo. *Jacobsen v. Anheuser–Busch, Inc.,* 392 N.W.2d 868, 871–72 (Minn.1986). The challenging party has the burden of demonstrating beyond a reasonable doubt that a statute violates a constitutional provision. *Id.* at 872.

■ The federal and Minnesota constitutions prohibit any impairment of contract. U.S. Const. art. I, § 10, cl. 1; Minn. Const. art. I, § 11. "Though the language of the contract clauses in both Constitutions is absolute, courts have indicated the prohibitions of such contract clauses must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Jacobsen,* 392 N.W.2d at 872 (quoting *Energy Reserves Group v. Kan. Power & Light Co.,* 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983) (*Energy Reserves*)). In determining whether a contractual impairment is unconstitutional, courts apply a three-part test:

> The initial question is whether the state law has, in fact, operated as a substantial impairment of a contractual obligation.... If there is a substantial impairment, the state, at the second step, must demonstrate a significant and legitimate public purpose behind the legislation. Third, the state's action is examined in the light of this public purpose to see whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.

*Christensen v. Minneapolis Mun. Employees Ret. Bd.,* 331 N.W.2d 740, 750–51 (Minn.1983) (quotation and brackets omitted) (applying test set forth in *Energy Reserves,* 459 U.S. at 411–13, 103 S.Ct. at

704–05). "This three-part test is applied with more scrutiny when the state seeks to impair a contract to which it is a party ... [because] complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake." *Id.* at 751 (quotation omitted); *see also Zuehlke v. Indep. Sch. Dist. No. 316,* 538 N.W.2d 721, 727 (Minn.App.1995) (stating that courts should "closely scrutinize" state statutes affecting public contracts to ensure that a state is not attempting to escape its financial obligations).

■ We first examine whether the compensation statutes have, in fact, operated to substantially impair the 1962 contract between Sverdrup and the state. *See Energy Reserves,* 459 U.S. at 411, 103 S.Ct. at 704. "In determining substantial impairment, courts consider the extent to which reasonable expectations are disrupted. However, there may be substantial impairment without total destruction of contractual expectations. The more severe the impairment, the greater level of scrutiny given the state law." *Drewes v. First Nat'l Bank of Detroit Lakes,* 461 N.W.2d 389, 391 (Minn.App.1990), *review denied* (Minn. Dec. 20, 1990).

The 1962 contract provides:

> [Sverdrup] indemnifies, saves and holds harmless the State and any agents or employees thereof from any and all claims, demands, actions or causes of action of whatsoever nature or character arising out of or by reason of the execution or performance of the work of [Sverdrup] provided for under this agreement.

The compensation statutes provide:

> Notwithstanding any statutory or common law to the contrary, the state is entitled to recover from any third party, including an agent, contractor, or vendor

retained by the state, any payments made from the emergency relief fund or under section 3.7393 to the extent the third party caused or contributed to the catastrophe. The state is entitled to be reimbursed regardless of whether the survivor is fully compensated.

Minn.Stat. § 3.7394, subd. 5(a).

Jacobs argues that when Sverdrup entered into the 1962 contract with the state, the state enjoyed sovereign immunity from suit in tort. Jacobs contends that the state's tort immunity was an implicit provision of the contract and characterizes the contractual indemnity provision as bestowing Sverdrup and its successors with a contractual right to "zero tort liability." According to Jacobs, Sverdrup did not expect that it might be required to indemnify the state on a tort claim.

■ "The laws existing at the time and place of the making of the contract, and where it is to be performed, enter into and form part of it." *Hoff v. First State Bank*, 174 Minn. 36, 39, 218 N.W. 238, 239 (1928). Jacobs is correct that the state enjoyed tort immunity when the 1962 contract was formed. *See Nieting v. Blondell*, 306 Minn. 122, 126, 132, 235 N.W.2d 597, 600, 603 (1975) (noting that the state's sovereign immunity had been recognized as ear-

ly as 1877, and abrogating the state's tort immunity with respect to claims arising on or after August 1, 1976). But before the formation of the 1962 contract, the legislature had repeatedly allowed individuals to assert, in district court, claims against the state arising out of the construction, repair, improvement, and maintenance of the trunk highway system—including claims for negligently caused death, personal injury, and injury to real and personal property.[8] In light of the legislature's practice, on occasion, of waiving the state's tort immunity for claims related to the trunk highway system, Sverdrup reasonably should have expected that the legislature might authorize tort claims against the state related to the design of the bridge.

We conclude that the compensation statutes do not substantially impair the 1962 contract; rather, the statutes enforce the bridge designer's open-ended obligation to indemnify the state. Because the compensation statutes do not impair the 1962 contract, we decline to address the remaining parts of the *Energy Reserves* test.

## IV.

■ We now address Jacobs's remaining arguments. First, Jacobs argues that the state's settlements with some of the plaintiffs[9] under the compensation stat-

---

8. *See, e.g.,* 1943 Minn. Laws ch. 662, at 1186–87 (authorizing certain claims, including claims for negligently caused personal injuries resulting in death); 1941 Minn. Laws ch. 539, at 1068–70 (authorizing certain claims, including claims for negligently caused death and personal injuries); 1939 Minn. Laws ch. 396, at 772–73 (authorizing adjudication and payment of certain claims for damages against the state involving a bridge on a trunk highway); 1939 Minn. Laws ch. 420, at 843 (authorizing certain claims, including claims for negligently caused personal injuries); *see also Dennison v. State*, 215 Minn. 609, 614–15, 11 N.W.2d 151, 154 (1943) (upholding 1943 Minn. Laws ch. 662 against a constitutional challenge); *Westerson v. State*, 207

Minn. 412, 417–18, 291 N.W. 900, 903 (1940) (upholding 1939 Minn. Laws ch. 420); Subcomm. on Immunity of the State from Suit, Minn. State Bar Ass'n, *Claims Against the State in Minnesota*, 32 Minn. L.Rev. 539, 541–44 (1948) (noting that the legislature has occasionally waived the state's tort immunity through special legislation); Orville C. Peterson, *Governmental Responsibility for Torts in Minnesota*, 26 Minn. L.Rev. 293, 722–27 (1942) (discussing legislative acts that waived governmental immunity from suit in tort).

9. It is not clear from the record which of the plaintiffs entered into settlement agreements with the state under the compensation statutes.

utes constitute *Pierringer* settlements [10] and, as a result, the state cannot assert its claim for statutory reimbursement against a non-settling defendant (here, Jacobs). Second, Jacobs argues that the state cannot seek reimbursement for payments made under the compensation statutes because these payments are "voluntary."

We do not reach the merits of these arguments because the legislature has clearly stated its intent to supersede all statutes and the common law in allowing the state to pursue reimbursement of payments made under the compensation statutes. *See* Minn.Stat. § 3.7394, subd. 5(a) (providing that the state is entitled to recover payments made under the compensation statutes "[n]otwithstanding any statutory or common law to the contrary"); *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18, 113 S.Ct. 1898, 1903, 123 L.Ed.2d 572 (1993) (stating that use of a "notwithstanding" clause in a statute "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section" and that a clearer statement of intent to supersede all other laws is "difficult to imagine" (quotation and citation omitted)); *Stringer v. Minn. Vikings Football Club, LLC*, 705 N.W.2d 746, 764 (Minn.2005) (stating that legislature may abrogate common law if it expresses a clear intent to do so).

## DECISION

Because the current version of section 541.051 applies retroactively to revive indemnity and contribution actions, the state's claims for contractual contribution and indemnity and for statutory reimbursement are not time-barred. Because

Jacobs has no vested right to repose, the retroactive application of section 541.051 does not violate Jacobs's due-process rights. Because the 1962 bridge-design contract provided that Sverdrup would indemnify the state, the compensation statutes passed after the collapse of the bridge do not impair the contract. Because the compensation statutes clearly show the legislature's intent to supersede all statutes and the common law, we reject Jacobs's remaining arguments regarding the state's claim for reimbursement of payments made under the compensation statutes. Accordingly, the district court properly denied Jacobs's motion to dismiss the state's claims.

**Affirmed.**

---

10. In a *Pierringer* agreement, a tortfeasor settles "for its fair share of plaintiff's award as later determined by the trier of fact." *Rambaum v. Swisher*, 435 N.W.2d 19, 22 (Minn. 1989). This type of settlement agreement is based on one used in *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963).